## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Kelleher Construction Corporation, | Civil No. 08-328 (DWF/SRN) |
| Plaintiff, | |
| v. | **MEMORANDUM** |
| | **OPINION AND ORDER** |
| Transportation Insurance Company, a subsidiary of CNA Insurance, | |
| Defendant. | |

---

Christian M. Sande, Esq., Christian Sande LLC; and Timothy J. Peters, Esq., Peters Law Firm, PLC, counsel for Plaintiff.

Eileen N. Miller, Esq., and Karen W. Howard, Esq., Colliau Elenius Murphy Carluccio Keener & Morrow; and Jacob S. Woodward, Esq., and Stacy A. Broman, Esq., Meagher & Geer, PLLP, counsel for Defendant.

---

## INTRODUCTION

This matter is before the Court on cross-motions for summary judgment brought by Plaintiff Kelleher Construction Corporation ("Kelleher") and Defendant Transportation Insurance Company ("Transportation"). For the reasons stated below, the Court grants in part Kelleher's motion and denies Transportation's motion.

## BACKGROUND

Kelleher is a concrete contractor doing business in the construction industry. Kelleher purchased comprehensive general liability insurance from Transportation (the "Transportation Policy"). (Aff. of Timothy J. Peters in Supp. of Pl.'s Mot. for

Summ. J. ("Peters Aff.) ¶ 2, Ex. A.)  The Transportation Policy includes coverage for

property damage liability, providing in part:

> We will pay those sums that the insured becomes legally obligated to pay
> as damages because of "bodily injury" or "property damage" to which this
> insurance applies.  We will have the right and duty to defend any "suit"
> seeking those damages.  We may at our discretion investigate any
> "occurrence" and settle any claim or "suit" that may result.  . . .

(Peters Aff. ¶ 2, Ex. A at 217.)

> The Transportation Policy defines "property damage" as:

> a.      Physical injury to tangible property, including all resulting loss of
>         use of that property.  All such loss of use shall be deemed to occur at
>         the time of the physical injury that caused it; or

> b.      Loss of use of tangible property that is not physically injured.  All
>         such loss of use shall be deemed to occur at the time of the
>         "occurrence" that caused it.

(*Id.* ¶ 2, Ex. A at 233.)

> The Transportation Policy also contains certain relevant exclusions:

> This insurance does not apply to:

> . . .

> k.      **Damage to Your Product**

> "Property damage" to "your product" arising out of it or any part of it.

> l.      **Damage to Your Work**

> "Property damage" to "your work" arising out of it or any part of it and
> included in the "products-completed operations hazard."

> This exclusion does not apply if the damaged work or the work out of
> which the damage arises was performed on your behalf by a subcontractor.

(*Id.* ¶ 2, Ex. 4 at 221.)

The Transportation Policy defines "your product" and "your work" as follows:

17.     "Your product" means:

    a.     Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        (1)     You;

        (2)     Others trading under your name; or

        (3)     A person or organization whose business or assets you have acquired; and

    b.     Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

    a.     Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product;" and

    b.     The providing of or failure to provide warnings or instructions.

. . .

19.     "Your work" means:

    a.     Work or operations performed by you or on your behalf; and

    b.     Materials, parties or equipment furnished in connection with such work or operations.

"Your work" includes:

    a.     Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

      b.      The providing of or failures to provide warnings or instructions.

(*Id.* ¶ 2, Ex. A at 233-34.)

In October 1997, Kelleher provided labor and materials in connection with a residential development project in Plymouth, Minnesota, called the Courts of Nanterre ("Nanterre Project").[1]  In particular, Kelleher provided labor, materials, and expertise on some of the streets and corresponding curbs and gutters within the Nanterre Project.  In September 2006, the Courts of Nanterre Homeowners Association (the "Association") sued Moen Leuer Construction, Inc. ("Moen Leuer"), the general contractor for the Nanterre Project, in Minnesota state court.  *See Courts of Nanterre Homeowners Ass'n v. Moen Leuer Constr., Inc.*, Court File No. 27-CV-07-4737 (Minn. Dist. Ct.) (the "Nanterre Action").  In the Nanterre Action, the Association alleges that Moen Leuer defectively designed and constructed the residential units and common property of the Nanterre Project (the "Property").  (*Id.* ¶ 4, Ex. C.)  In particular, the Association alleges that the Property is defective in many ways, including but not limited to:

      a.      Water entry at window locations and deck locations;
      b.      Water entry from the absence of caulk, poorly installed caulk and/or deteriorated caulk and from the basic improper design of the flanged clad windows;
      c.      Water accumulation behind cladding;
      d.      Deterioration of wood in sashes;
      e.      Windows which exceed values set forth in the window manufacturer's test specifications for allowable air infiltration per the Minnesota Energy Code;

---

[1]      There were over twenty contractors and subcontractors hired to work on the Nanterre Project.

f.  Feature boards at the perimeter of windows on the subject structures are not sloped adequately along the bottom of windows to allow for proper drainage of water;

g.  Failure to follow the window manufacturer's installation instructions for the application of caulking;

h.  Water entry and subsequent wetting and deterioration of sheathing at the ends of decks;

i.  Incorrect installation of flashing;

j.  Failure and or improper installation of windows;

k.  Inadequate or failed flashing and stucco stop bead;

l.  Lack of or inadequate gutter systems;

m.  Excessive cracking which exists in stucco on the five buildings at the west end of the complex;

n.  Differential settlement of footings;

o.  Asphalt sinking and gaps at the garage floor aprons and curb lines;

p.  Disjointed sidewalk/patio concrete;

q.  Concrete sidewalks and patios that are settled, heaved, cracking, and tipped;

r.  Improper design and construction; . . .

(*Id.* ¶ 4, Ex. C at ¶ 7.)  In the Nanterre Action, Moen Leuer filed a Second Amended Third-Party Complaint ("Third-Party Complaint") seeking contribution and indemnity from more than twenty third-party defendants, including Kelleher.  (*Id.* ¶ 5, Ex. D.)  In its Third-Party Complaint, Moen Leuer alleges that the third-party defendants, including Kelleher, "provided goods, services, and expertise to the construction of the properties described in Plaintiff's Complaint."  (*Id.* ¶ 5, Ex. D at ¶ 3.)  Moen Leuer further alleges that "to the extent Moen Leuer is found liable for damages alleged in [the Nanterre Action], such liability results from the negligence, breach of contract, breach of warranty, strict liability or other wrongful or improper conduct of the listed Third-Party Defendants."  (*Id.*)  The Third-Party Complaint does not identify any action specific to Kelleher, or any other third-party defendant.

After receiving the Third-Party Complaint, Kelleher filed an answer and served discovery requests on the Association and Moen Leuer.  Kelleher sought, among other information, the factual and legal basis for the claims against Kelleher.  (*Id.* ¶ 6.)  Neither the Association nor Moen Leuer provided responses to Kelleher's discovery.  (*Id.*)  On May 1, 2008, the parties entered into a stipulation, agreeing to dismiss Kelleher from the litigation without prejudice.  (*Id.* ¶ 8, Ex. F.)

On September 27, 2007, Kelleher tendered Moen Leuer's Second Amended Third-Party Complaint to Transportation.  (Aff. of Scott A. Cady in Supp. of Transportation's Mot. for Summ. J. ("Cady Aff.") ¶ 4.)  On October 5, 2007, a Transportation Claims Specialist spoke with both the president of Kelleher and an attorney for Kelleher about the scope of work performed by Kelleher on the Nanterre Project.  (Cady Aff. ¶¶ 5, 6.)  Kelleher indicated that it had provided some concrete curbs, sidewalks, and pavement for the Nanterre Project; specifically, Kelleher indicated that it had worked on some community sidewalks, curbs, and street paving, but did not work on any driveways, slabs or sidewalks on individual homeowner property.  (*Id.* ¶ 6.)  Kelleher also provided Transportation with an expert report (the "Expert Report") that was prepared by an engineer, Geoff Jillson, who was retained by the Association.  (*Id.* ¶¶ 7, 8, Ex. 1.)  The Expert Report, entitled "Initial Evaluation of Site Conditions and Building Envelopes at Courts of Nanterre," was "prepared for the purpose of assisting in valuation of a property damage claim."  (*Id.* ¶ 8, Ex. 1 at 2.)  The Expert Report evaluates the damages claimed by the Association in the Nanterre Action**,** but does not assign

liability to particular parties who may have caused the alleged damage.  With respect to

damage relating to curbs, gutters and paving, the Expert Report states, in part:

> It is our opinion that sections of curbs and gutters and select areas of
> pavement on driveways and streets in the complex should be removed due
> to excessive cracking, pitting and spalling.

(*Id.* ¶ 8, Ex. 1 at 22.)

On October 22, 2007, Transportation notified Kelleher that it was denying any

obligation to defend or indemnify Kelleher in connection with the Third-Party

Complaint.  (*Id.* ¶ 11, Ex. 2.)  Transportation explained:

> In reviewing the pleadings as well as the plaintiff expert's damage report,
> we note that there is no indication of resultant damages caused by your
> work.  The only allegation regarding concrete flatwork noted on the
> plaintiff's expert damage list involves cracking, pitting and spalling to
> sections of curbs and gutters.  These would be categorized as damages to
> your work or product and do not constitute covered property damages as
> defined by your policies.  The standard commercial general liability form
> does not provide coverage for damage to an insured's work or product and
> there is, therefore, no coverage to this loss.
>
> . . .
>
> Since only damage to your work or product is being alleged by the
> Plaintiff's [sic] in this action and no resulting damage has manifested as a
> result of your work, we are unable to afford coverage to you for the subject
> claim under your Transportation and Transportation Insurance Company
> Policies.

(Peters Aff. ¶ 9, Ex. G; Cady Aff. ¶ 12, Ex. 2.)

Following Transportation's denial of coverage and refusal to defend Kelleher,

Kelleher brought suit against Transportation in Minnesota state court for breach of

contract and declaratory judgment.  (Peters Aff. ¶ 3, Ex. B.)  Transportation removed the

action to this Court.

**DISCUSSION**

**I.     Summary Judgment Motions**

**A.     Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Enter. Bank*, 92 F.3d at 747.  The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

Both Kelleher and Transportation move for summary judgment.  Kelleher seeks an order declaring that Transportation has a duty to defend and indemnify Kelleher in the

underlying litigation.  Kelleher further requests a judgment for attorney fees and

consequential damages from Transportation in seeking enforcement of the Transportation

Policy.  Transportation contends that it is entitled to summary judgment on Kelleher's

claims because there is no genuine issue of material fact and the record clearly establishes

that the damages asserted in the Nanterre Action, relative to Kelleher's work, fall within

the Transportation Policy exclusions.  Accordingly, Transportation asserts that, as a

matter of law, it has no duty to defend or indemnify Kelleher.

The interpretation and construction of an insurance contract is a question of law.

*Haarstad v. Graff*, 517 N.W.2d 582, 584 (Minn. 1994).  "A duty to defend an insured on

a claim arises when any part of the claim is 'arguably' within the scope of the policy's

coverage."  *Jostens, Inc. v. Mission Ins. Co.*, 387 N.W.2d 161, 165 (Minn. 1986) (citing

*Prahm v. Rupp Constr. Co.*, 277 N.W.2d 389, 390 (Minn. 1979)).  Further, "an insurer

who wishes to escape that duty has the burden of showing that all parts of the cause of

action fall clearly outside the scope of coverage."  *Id*. at 165-66.  In general, an "insurer's

duty to defend is determined by considering the allegations of the complaint in light of

the relevant policy language."  *Haarstad*, 517 N.W.2d at 584.  The insurer can also look

to facts outside the complaint to determine whether coverage exists.  *Id*.

Transportation maintains that it properly denied coverage because the evidence

reveals that the damage alleged in the underlying litigation related to Kelleher's work fits

directly within the work and product exclusions of the Transportation Policy.  In

particular, Transportation asserts that Kelleher's work was limited to community concrete

curbs, gutters, and pavement; that the only criticism in the Expert Report regarding curbs,

gutters and pavement was the recommendation to replace these items due to their being cracked, pitted, and spalled; and that there is no evidence that the concrete damaged anything other than itself.

Kelleher asserts that Transportation improperly and prematurely denied coverage without developing facts establishing that the liability in the underlying litigation is limited to Kelleher's own work.  In particular, Kelleher asserts that Transportation is required to provide coverage to Kelleher because the alleged damages in the underlying litigation are arguably within the scope of the Transportation Policy.

The record reveals that in determining whether coverage exists, Transportation reviewed the allegations in the Nanterre Action and the Third-Party Complaint, the Expert Report, and the representations made to it by Kelleher with respect to the scope of the work Kelleher performed.  The complaint in the Nanterre Action alleges a broad range of damage caused by Moen Leuer.  The Third-Party Complaint, in turn, alleges that "to the extent Moen Leuer is found liable for damages alleged in [the Nanterre Action], such liability results from the negligence, breach of contract, breach of warranty, strict liability or other wrongful or improper conduct of the listed Third-Party Defendants." (Peters Aff. ¶ 5, Ex. D at ¶ 3.)  While none of the allegations in the underlying litigation specifically assigns damage to Kelleher, the allegations cover a broad range of defects in the Nanterre Project, including, but not limited to, allegations related to water entry and accumulation, installation of windows, concrete work, and asphalt work.  The complaint also generally alleges "improper design and construction."  Kelleher is one of more than twenty third-party defendants named in the underlying litigation.  Even considering

Kelleher's acknowledgement that its work on the Nanterre Project was limited to some sidewalks, curbs, and street paving, the allegations in the Nanterre Action and the Third-Party Complaint do not explain Kelleher's alleged liability or limit the alleged damage to Kelleher's own work.

Transportation claims that, through its own investigation, it has discovered facts that justify its denial of coverage. In particular, Transportation relied heavily on the Expert Report. The Court acknowledges that Transportation can properly evaluate the claims by looking at facts presented outside of the complaint. However, the Court concludes that the information in the Expert Report does not justify Transportation's denial of coverage here. The Expert Report does not indicate that the claims asserted against Kelleher are limited to damage to Kelleher's own work. The Expert Report describes a variety of problems with the Nanterre Project, but does not explain or opine on what damage was caused by any particular party. The Court also notes that the Expert Report was prepared on behalf of the Association in its case against Moen Leuer. There is no evidence that Moen Leuer, in its Third-Party Complaint, has conceded that its damage theory against Kelleher or the other third-party defendants is consistent with the Expert Report. Therefore, Moen Leuer's theory of liability against Kelleher is not limited to the information in the Expert Report. Moreover, Kelleher was dismissed from the underlying litigation without having done its own expert analysis.

The Court concludes that Transportation's denial of coverage is premature because the facts do not clearly place the underlying claims outside the scope of coverage. It is at least arguable that the broad claims asserted against Kelleher fall within the scope of the

Transportation Policy.  Thus, Transportation must undertake its duty to defend Kelleher until such time it becomes clear that no claim in the litigation is included in the policy coverage.  *See Meadowbrook, Inc. v. Tower Ins. Co.*, 559 N.W.2d 411, 416 (Minn. 1997). The Court grants Kelleher's motion insofar as the Court concludes that Transportation had a duty to defend Kelleher in the underlying litigation.[2]

Kelleher also seeks summary judgment on its claim that Transportation owes a duty to indemnify Kelleher.  Presently, however, there are no pending claims or findings against Kelleher, as Kelleher was dismissed from the underlying litigation.  The Court acknowledges that the dismissal was without prejudice and that there remains at least a possibility that Kelleher could be a named again as a third-party defendant.  That possibility, however, is speculative.  Therefore, the Court declines to grant summary judgment on the issue of indemnification at this time.

## B.    Attorney Fees

Transportation claims that it is entitled to recover its attorney fees and consequential damages incurred in prosecuting this action.  "[W]here an insurer refuses to defend an insured after the insured has tendered the suit and a duty to defend is subsequently determined in a declaratory judgment action, the insured can recover the

---

[2]    Kelleher also requests an order requiring Transportation to reimburse Kelleher for all attorney fees and costs incurred by Kelleher in the underlying litigation.  Kelleher has not provided documentation of such fees and costs.  Transportation asserts that Kelleher has not yet designated any defense bills or other claimed damages in relation to this motion.  Transportation has also reserved the right to assert objections to any such claimed damages.  The Court will allow for further briefing on the issue of such fees and costs.

attorney fees for the declaratory judgment action." *Westfield Ins. Co. v. Kroiss*, 694

N.W.2d 102, 108 (Minn. Ct. App. 2005). *See also Chicago Title Ins. Co. v. FDIC*, 172

F.3d 601, 605 (8th Cir. 1999). Here, Transportation had a duty to defend Kelleher.

Transportation refused to do so. Accordingly, Kelleher is entitled to its attorney fees and

costs incurred in prosecuting the present action.

## CONCLUSION

Accordingly, based on the files, records, and proceedings herein, and for the

reasons set forth above, **IT IS ORDERED** that:

1.     Transportation's Motion for Summary Judgment (Doc. No. 35) is **DENIED**.

2.     Kelleher's Motion for Summary Judgment (Doc. No. 18) is **GRANTED IN**

**PART** and **DENIED IN PART** as follows:

a.     Transportation had a duty to defend Kelleher in the *Courts of*

*Nanterre Homeowners Association v. Moen Leuer Construction, Inc.*, Court

File No. 27-CV-07-4737 (Minn. Dist. Ct.).

i.     Absent stipulation of the parties with respect to

the issue of attorney fees and costs incurred by Kelleher in

defending itself in the underlying litigation, Kelleher shall

submit an affidavit to the Court with a memorandum, not

exceeding ten pages, setting forth the request for attorney fees

and costs within ten days of the date of this Order.

Transportation will then have ten days to submit a responsive

memorandum, not exceeding ten pages. The Court will

reserve the right to proceed with or without oral argument at that time.

b.      Kelleher is entitled to its attorney fees and costs incurred in prosecuting the present action.

i.      Absent stipulation of the parties with respect to the issue of attorney fees and costs, Kelleher shall submit an affidavit to the Court with a memorandum, not exceeding five pages, setting forth the request for attorney fees and costs within ten days of the date of this Order.  Transportation will then have ten days to submit a responsive memorandum, not exceeding five pages.  The Court will reserve the right to proceed with or without oral argument at that time.

Dated:  July 22, 2008                    s/Donovan W. Frank
                                         DONOVAN W. FRANK
                                         Judge of United States District Court